206.2. The next case of the morning is Moreno v. Sentinel Insurance, Case No. 20-20621. When you're ready, Mr. Gould. Good morning, and may it please the Court. Andrew Gould for the appellant, Osman Moreno. I'd like to reserve four minutes for rebuttal. The District Court erred in granting summary judgment for Sentinel for two primary independent reasons. First, the District Court incorrectly imposed an explicit request for defense requirement when no such requirement exists in the plain text of the insurance policy, nor in Texas case law as properly interpreted. Second, even assuming there was an explicit request for defense requirement, the District Court erred in holding that Sentinel was prejudiced as a matter of law when it had ample opportunity to interpose a defense. For either of those reasons, this Court should reverse, and it may either render judgment for Mr. Moreno or remand for a new trial. Alternatively, we've requested that this Court consider certifying questions to the Texas Supreme Court. The main issue, Your Honor, is about the explicit request for defense requirement, and that is all about notice. Now, if there's one thing, and only one thing that the parties agree on here, it's that if NF Painting never notified Sentinel of the lawsuit, there'd be no duty to defend. Our position is that NF Painting did notify Sentinel of the lawsuit when its attorney emailed the original petition to Sentinel, three months after NF Painting was served. Critically, the policy itself has no separate requirement for an explicit request for defense. It just speaks of notice, that you must notify us of a claim, and Crocker, which is perhaps the Texas Supreme Court case that Sentinel primarily relies upon, the District Court primarily relies upon, and frankly, all the subsequent cases that are cited, such as Hudson, Egley, and Holt, they all rely on Crocker. Even Crocker says, and this is a quote, most importantly, we must give the policies words their plain meaning without inserting additional provisions into the contract. Sentinel is free, going forward, to modify its insurance contracts to say, not only must you notify, but if you want a defense, you have to request it, and I've given examples in my reply brief of what that language might say. It's not in there. So then we turn to the case law, and that is where much of, again, Sentinel's and the District Court rely on, where there's language in there that says there must be, you must notify and demand a defense. I would urge the Court to read Crocker closely, because Crocker is not a case about a request for a defense. It's about the insured's, excuse me, the insured's threshold failure to provide any notice whatsoever. And, in fact, Crocker is distinguishable for another reason from this case, because Crocker was not about the primary insured failing to give notice. It was an additional insured. Crocker involved a nursing home accident in which the plaintiff sued the nursing home and the nursing home employee who allegedly caused the negligence. The nursing home got a defense from its insured, but what about the nursing home employee? The employee refused to answer, and, in fact, the insurance company reached out to the employee to essentially say, what are you going to do? Nothing. They got nothing from that employee. And so, eventually, that employee failed to answer and got a default judgment. Well, here, we're not dealing with an additional insured. We're dealing with a primary insured, which is NF Painting. And, here, NF Painting did give notice. We are not simply relying on knowledge of the lawsuit from Beezer, the alleged additional insured. And so, if you look at those cases, such as Crocker, Hudson, Egley, and Holt, what distinguishes this case from all of them is that in none of those cases did the insured provide notice. And, obviously, again, as I started and I said, if there's no notice, then we agree. There's no duty to defend. Even Crocker talks about the purposes behind it. And the quote is, the notice and delivery of suit papers, provisions, and insurance policies serve two essential purposes. They facilitate the timely and effective defense of the claim against the insured. And, here's the key point, more fundamentally, too, they trigger the insurer's duty to defend by notifying the insurer that a defense is expected. That's not talking about the notice, delivery of suit papers, and request for defense provisions. It's just notice and delivery of suit provisions. What do you do with the facts in this case that it seems clear NF was not expecting a defense? Respectfully, Judge Southlook, we disagree with the characterization that NF Painting didn't expect a defense. So what It declined a defense. But go ahead and tell me. It seems to me that NF declined a defense, but go ahead and give your answer. Sure. So where that comes from, Your Honor, in the district court's opinion and what Sentinel cited in its summary judgment response is a conversation that the claims adjuster for Sentinel, Ms. Catchmere, had with the attorney for NF Painting, Mr. Lopez. And in this conversation, Mr. Lopez allegedly said that NF Painting, that Mr. Flores, who is the owner of NF Painting, that he did not tender this because he did not think it was covered. Now, if you look at the record itself, and this is in the deposition of Mr. Flores, at ROA 708, he was asked about the insurance policy and whether he thought it covered injuries to people he hired, and he said that he thought that it did. So Let me ask, in his deposition, did he deny having that conversation with the representative for the insurance company? No, Your Honor. I did not read that. I don't believe that question was asked in the deposition, so I can't say one way or the other whether he was definitively Well, does that mean the only evidence in the record is that the conversation occurred and the owner, NF, or whoever its role was, says we're not covered, we're not looking for defense, we've got Lopez to do it for us? Well, Your Honor, if it's viewed as a factual finding within the district court's opinion Did the district court make that finding, or is it just in the It's just, it's not an explicit finding. It's in the facts, kind of the background section where the district court recites this conversation. I don't think that's correct. I'm looking at record at 950, the uncontroverted summary judgment evidence is that NF Painting did not comply with its obligations under Section E2 of the policy, which have to do with cooperation and defense, or otherwise notify Sentinel of Moreno's suit, or ever request a defense from Sentinel. Right, and you're right, Judge Joseph, that's what the district court's opinion says, and we respectfully disagree with that. That's in the legal, okay. I'm sorry, if I misspoke, if I misremembered where it occurred, I apologize, but our position remains that they did provide notice within Texas law when they sent the petition to Sentinel. And beyond notice and an explicit request for defense, the court still erred in finding that if they failed to request a defense, that it was prejudicial as a matter of law. Prejudice, critically, is not the judgment itself. It's what is a prejudice that flows from the specific breach, which here refers to the failure to request a defense. Sentinel had ample opportunity to interpose a defense. The agreed judgment did not occur until two years, I believe about two years after the initial, the two years after the petition was sent from NF Painting to Sentinel. They had an opportunity to interpose a defense, and in fact, they did interpose a defense for Beezer, who did tender, based on this. Now, obviously, as I said in the reply brief, they're prejudiced in the sense that they're potentially now subject to a $1.6 million judgment. But that's not prejudice within the meaning of Texas law. And the key case, I think, on this is Hamel, which is cited in our brief. And that gets more to the remedy of what occurs when there's a wrongful breach of the duty to defend. Why do you think Judge, you know, you're talking about wrongfulness, so why do you think Judge So, we did, this, this, I disagree with that, Your Honor. And I think the Texas Supreme Court case in Hamel talks about the difficult position that an insurer places their insureds when they refuse to defend in the first place. We're not here talking about whether there's a, that Sentinel ultimately would have been under a duty to indemnify NF painting. It's that there was a duty, an initial duty to defend, and what Hamel discusses is how when the insurer, when the insurer refuses, excuse me, the insurer refuses to defend in the first place, it creates these problems, and it can create these distorting effects where, for example, there is less incentive to fight the proceedings. Now, we litigated this case, and I'm here in a somewhat awkward position, Your Honor, because I'm here, I represent Osman Moreno. I don't represent NF painting. Right. We were, I'm sorry? Right. And so, we were vigorously litigating against both NF painting and Beezer. And you can see this in the summary judgment record with respect to the depositions. We can't control what they did. What we can say is that they did have a duty to defend. Now, with respect to the, you know, how we called it, sorted, if you agree, if you agree with the district court that this was not the product of fully adversarial proceedings, and that's using the term in Hamel, the Texas Supreme Court case, then fine. The judgment itself doesn't stand. We can't collect on that. But critically, the remedy is not simply to render judgment for Sentinel. It's to send the case back for a new trial on liability and damages, and potentially indemnity as well. Again, I can't emphasize that enough, that there is a key distinction between the duty to defend and the duty to indemnify, because the duty to defend, as we talk about in our four corners of the original petition and the four corners of the policy. Let me take you back to an inquiry both Judge Jones and I had earlier. I have looked further into the opinion of the district court, and I would say this was a fact finding. I want you to tell me how we should deal with it. Sentinel repeatedly followed up with Lopez, who often was unresponsive, but when Lopez spoke to Sentinel's catchmere on June 13th, he stated that N.F. Painting did not report or tend to the lawsuit to Sentinel. He hired the other lawyer because there's no coverage. I would say in the way that's written, that's a fact finding based on what you tell me is in the record, no denial by the witness in his deposition and the evidence from Sentinel that that was what they were told. So if we take them, you can say, well, that's not a fact finding held up by the evidence, but if that is true, it seems to me an awful lot of what we're talking about is irrelevant. It's one thing to say they have a duty to defend. You send the paperwork to the insurance company, the insurance company talks to the insurer, the insurer said, nah, we're not covered, we're going to take care of this ourselves. I don't see what the insurance company does wrong. Your Honor, so to get back to your original question, whether that's a factual finding, candidly, I read it as a factual finding, too, and so we must show that it's clearly erroneous to overcome that. I think it is clearly erroneous because it is simply based on this, what's effectively a double hearsay statement that it's, that according to Katchmere, Mr. Lopez said that Mr. Flores said that they didn't tender it because they didn't believe. What form does Katchmere present this evidence, is there a deposition? There's a declaration, Your Honor. So there's a declaration with supporting exhibits, and so critically, with respect to this phone call, there are emails in the record that are attached, there's no exhibits with respect to this phone call. And we don't view this as, we think that it's, if there was explicit evidence that they said, we do not expect a defense, we do not intend, we don't expect for you to defend us, we don't expect for you to pay any judgment, fair enough, but we don't think the record shows that. Well, I would say that the actions in defense seem circumstantially to support it as well. If they were wanting a defense or expecting a defense, and when they weren't getting it, there's no, nothing to support, they then said, where are you sitting now, how come you're not here defending us? I think in some respects, Your Honor, we're dealing with an unsophisticated party, I mean, if you look at ROA 699, which is the beginning of the deposition with Nelson Flores, you'll see that he's speaking through an interpreter. And I, I'm sorry, Mr. Flores, who's the owner of NF Painting, and I don't mean that to suggest that because he's speaking Spanish that he's uneducated, I'm just trying to say that But he's got a lawyer, he's got, is Lopez the lawyer? Yes, he did, yes, he did have a lawyer. But respectfully, I think the defense belongs to NF Painting and Mr. Flores, I see my time is up. All I would say is, we don't think that that's as conclusive, and so again, we would ask that this Court reverse and either render or remand for a new trial, or as I haven't talked about, potentially certify questions to the Texas Supreme Court. Thank you for your time. We have time for rebuttal. Thank you. Mr. Spitaletto. Thank you, Judges. Good morning. May it please the Court. My name is Tommy Spitaletto. I represent the Appalachian Sentinel Insurance Company Limited. The appellant's entire argument is based on this fiction that NF Painting provided proper notice to Sentinel and that Sentinel somehow understood that a defense was requested. On the contrary, neither is supported by the record. This is not a case involving notice by the insured that at some point occurred but may have been untimely. This is a case that involves not only the absence of notice, but an insured's conscious decision not to report a case. Let me make sure . . . I don't think there's any argument in this case by you that the notice was untimely anyway. It does seem to me that it was certainly not an immediate beginning of the lawsuit. That's not an issue in this case about the notice being improperly delayed and you therefore could not get involved at the beginning of the case, et cetera? Correct. All right. It is an insured that explicitly told Sentinel through its lawyer that they were not requesting a defense and were not . . . That does seem to be a very significant part of this because I'm a little concerned, but I'm sure you'll get to it, about just how clear the law is that part of the notification is you must request a defense. So it does seem to me the evidence is important. Your friend on the other side says this was double hearsay. Why don't you respond to that? Sure. Well, certainly, first of all, there were no such objections in the trial court nor in the briefs about the validity of the evidence. And even more importantly . . . No objections to the introduction of this statement? Correct. And more importantly, it was not disputed. There is a declaration in the record. It's Record 127 on June . . . By Ketchmere or whatever his name is? By Ketchmere, yes. Julie Ketchmere, Ms. Ketchmere. She was the claims examiner. After multiple emails, letters, phone calls, voicemails, trying to track down the insured, trying to track down their lawyer, NF Painting, the insured ultimately told Sentinel, Mr. Lopez is my lawyer, speak to my lawyer. And then Ms. Ketchmere started addressing letters, emails, and phone calls to Mr. Lopez. They ultimately reached Mr. Lopez. And this, of course, is after the accident happened, which is an occurrence under the policy, and there's no evidence or argument that that was ever reported to Sentinel or that NF Painting sought insurance coverage for that. This is after the lawsuit was filed against NF Painting and Beezer, their co-defendant. There was no request for coverage or notice of that lawsuit. After demands for indemnity were made to the insured by Beezer, there was no evidence or argument that that was submitted for coverage. NF Painting retained counsel, answered the lawsuit, began serving discovery. They did not notify Sentinel of any of that or request insurance coverage. The only way that Sentinel found out about this lawsuit is because, as the record shows, Beezer, the co-defendant, forwarded Sentinel their demands for defense and indemnity to NF Painting. Not NF Painting. NF Painting didn't send anything. So that's what began this over a month of emails, phone calls, and letters from Ms. Ketchmere to NF Painting and their insured. Please contact me immediately. If you, Mr. Lopez, represent them, please contact me. And then on June 13th is the critical exchange. That's record page 127. Lopez confirmed to Ms. Ketchmere that, yes, I represent NF Painting, and NF Painting did not report or tender the lawsuit. Lopez told Sentinel that NF Painting hired him because Mr. Flores did not believe there  was any evidence of NF Painting. Let me ask about whether that's contested or not. I forget what opposing counsel said in his deposition. Is it a deposition of Lopez or a deposition of Flores? It's a deposition of Flores. Okay. And Flores was not part of that conversation? Correct. So there would not have been, I forget how he put it, whether he was aware of the conversation or whatever, but he would not have been a witness to that conversation? Correct. Okay. I'm not sure that the Flores deposition is cited in any of these. There's no Lopez deposition. It is not a Lopez deposition. Okay. But there is... It was attached to a semi-judgment motion, the Ketchmere affidavit? Correct. And there was no objection to it? No objection to it. Not only is there no objection, but as I began to say, it's not disputed. Mr. Moreno didn't come in and say, no, somebody did request a defense. They didn't take the deposition of NF Painting or Mr. Lopez and have him say, no, me sending that in meant that we were requesting a defense. No, these are undisputed facts. It's not about characterizations or anything. They are undisputed. So this is not a case about untimely notice or anything. It's a case where the insured expressly told the carrier that we are not tendering the lawsuit. Why did Judge Werlein refer to this as a set of sordid facts? Well, it looks like a setup to me, Your Honor. You mean a setup between the plaintiff and the painting company? I'm not sure that's before the court, but at some point, I'm not... Well, did you have oral argument before Judge Werlein? I'm just wondering because he's a particularly careful fellow. He was also an expert in insurance litigation, and he doesn't say things like this very often. I believe, Your Honor, that the judge looked at an agreed judgment that was presented to a court without a trial, without any evidence, motion, or argument, and was simply signed by the judge and recites facts that have nothing to do with the negligence claims that were at issue in the underlying lawsuit but simply say, attempt to say that NF Painting provided proper notice, which is not material or was not actually litigated, is not related, and I believe that was the judge's assessment of those things. He called it a curious document. Your argument in the briefing is, at least, that that ruling awarding a million-plus dollars against the defendant never actually held the defendant was negligent or otherwise responsible for the injury? Correct. Okay. The judgment is in the record as well. I would note here that the appellant's argument that Texas law does not impose an explicit request requirement is simply wrong because that has been part of Texas law for many years, and I'll address that further. But as to his second argument that Judge Werlein found that the facts were prejudicial as a matter of law, I believe is also incorrect. Judge Werlein did not address this summary judgment ruling as a matter of prejudice. There was not a finding of prejudice. This is outside of the paradigm of prejudice. Judge Werlein, we believe, correctly observed, as the cases require, that this insured never requested a defense and that that's a threshold duty, and not having done that, not having submitted the original lawsuit, not having retained independent counsel and not notified us, not notified us of an amended pleading, not notified the carrier of the actual judgment for which they seek coverage now, not having notified the carrier of any of those things, but in fact having served discovery in the underlying case that says, we do not have an insurance policy that applies to this. It's not a question of prejudice at all. I think we have your argument because you've said the same thing three or four times, so I think it's very clear. Well, and I simply also wanted to say, Your Honor, that the requirement that the insured request a defense is not something new. It's not something that needs to be certified. It's been a requirement of the Crocker case and the Weaver case for decades, and the courts clearly find that that is required. If it's a requirement, and there certainly is case law with statements in it that can be interpreted that way, you do not have in your policy that obligation, do you? There's no language in there, and you shall, if you are interested, request a defense or something comparable. Well, it's how the courts interpret the requirement. Understood. But that's not language in your policy. The policy says notify the insured of an occurrence, notify the insured of a claim or a lawsuit. Cooperate in the investigation. Cooperate in the investigation. Forward all legal papers, summonses, notices, and the courts interpret that language to mean as a threshold duty, an insured at some point has to communicate to a carrier that they want a defense and expect a defense. That would seem to be part and parcel of being defended, but nonetheless the explicit language does not seem to be in your policy of requesting a defense. The terms request a defense are not in the policy, but it's how the courts have interpreted that requirement. Fine. Just want to make sure where we are. This is clear from Crocker, Weaver, Eggly. It's a threshold duty. This whole duty to defend versus duty. Can we rely on Crocker, written by Judge Willett, who is no longer with that court? That's all right. It's rhetorical. No comment, Your Honor. The duty to defend versus duty to indemnify discussion and briefing I'd also suggest is a red herring that's not relevant to any of this. When there was no request for a defense, the duty to defend is not triggered at all. But, again, Mr. Moretto is the judgment creditor. He is the plaintiff. He is not the insured. He was not owed a defense. This lawsuit that gave rise to this coverage dispute at the district court prior to this appeal, there was no claim for defense costs. Mr. Moretto is suing Sentinel for the amount of money in the judgment. So to the extent that's anything, that's the duty to indemnify. No duty to defend was ever triggered. No duty to defend is relevant. And any duty to defend cases are not relevant to the court's analysis here. I would also submit that Crocker, Hudson, Eggley cases all provide that a request for a defense is required. And with that, I will conclude by suggesting that this case is similar to all of those cases. As I quote from Crocker, insurers owe no duty to provide an unsought, uninvited, unrequested, unsolicited defense. And that's what happened here. The facts are undisputed. And Sentinel submits that. All right, sir. The district court should be affirmed. Thank you, judges. All right. Thanks. Mr. Gould, rebuttal. Very briefly, Your Honor, just three points. First, I heard my friend on the other side say that it was, that we explicitly, I believe that was the term, that we explicitly, excuse me, not we, it's NF Painting, explicitly didn't request a defense. I'm just going to read directly from the record here. This is ROA-127 because this is the Cachemire Declaration that I believe that Judge Werle and I relied upon. On June 13, 2017, I spoke with Attorney Lopez by telephone. On that telephone call, Attorney Lopez confirmed that he was representing NNF Painting in the underlying lawsuit and that NNF Painting did not report or tender the underlying lawsuit to Sentinel and hired Attorney Lopez because Florence did not believe there would be coverage for the underlying lawsuit due to the fact that Moreno, the plaintiff in the underlying lawsuit, was an employee of NNF Painting. Now, that's in the record. I can't get around that. What I can say, though, I can't get around in terms of what that says. What I can say is that it just says he did not believe. It's not that he didn't, he wasn't requesting a defense. And moreover, if Sentinel responded by just saying okay and they didn't ask for anything else and Mr. Lopez never sent the petition to Sentinel, then there would be no obligation. I'm relying strictly on the email where he did send, where Mr. Lopez eventually sent Sentinel the petition. That is notice. The second point with respect to Crocker and whether there is this requirement for a demand for defense, again, I just respectfully disagree and I would ask the Court to read Crocker and the cases that it preceded because, again, in those cases, they were about the threshold failure to provide any notice. And my friend quoted the conclusion of Crocker, but again, I quoted part of the analysis of Crocker, which is the notice and delivery of suit papers, provisions, and insurance policies serve two essential purposes. They facilitate the time and effect of defense, and more fundamentally, they trigger the insurer's duty to defend by notifying the insurer that a defense is expected. It's not a separate requirement. And I do not read those as setting conjunctive requirements one and two. The third point, again, just returns to the remedy. And Judge Jones, again, you brought up the sordid point. And again, I don't mean to be repetitive, but the last thing I'll say is, again, if you don't find that this is the product of fully adversarial proceedings, fair enough, then the $1.6 million judgment cannot stand. But under Hamel, what instead happens when they lose the duty to defend, which we do believe occurred here, would be to send it back for a new trial on liability and damages. If there are no further questions, we ask that you reverse, render, remand, or certify. Thank you for your time. Thank you very much. This concludes our oral arguments for the week. The court is in recess.